IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS,

    **Plaintiff,**

v.

NICHOLAS LAMB,
STEVEN DUNCAN,
RUSSEL GOINGS,
DEE DEE BROOKHART,
ALAN DALLAS,
JEFFREY STRUBHART, and
MICHAEL GEIER,

    **Defendants.**

Case No. 17-cv–997-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Nicholas Lamb,[1] Steven Duncan, Russel Goings, Dee Dee Brookhart, Alan Dallas, Jeffrey Strubhart, and Michael Geier (Doc. 54). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

This is a prisoner civil rights case arising out of events that occurred at Lawrence Correctional Center ("Lawrence"). On March 5, 2016, Plaintiff James Owens, then an inmate at Lawrence, was moved to an ADA cell, A-L1. (Doc. 1, p. 4, ¶ 18.) On the same day, Owens discovered there was a water leak in the wall between his cell and the shower

---

[1] The Clerk of Court is **DIRECTED** to correct Defendant's name on the docket to Nicholas Lamb.

next door. (*Id.*) Owens is confined to a wheelchair, so he had to wheel through the pooling water to get in and out of his cell. (*Id.*) As a result, his hands would become "covered in water that was contaminated with other inmates' bodily fluids," including urine, which he alleges "caused him to have bouts of diarrhea and constipation, as well as a general lack of energy and psychological stress." (*Id.*) While the leak didn't happen every day, the water went completely across his cell at times. (Doc. 55-1 at p. 33.) Although the water wasn't deep, "it could go from nothing to a good size puddle." (*Id.* at p. 34.)

After repeatedly asking his wing officers and the cell house lieutenants to place a work order to repair the leak, Owens sent a request to his counselor, Defendant Strubhart, on March 15, 2016. (*Id.* at p. 40.) Defendant Strubhart responded to Owens on March 18, 2016, saying that he had submitted a work order and that they were waiting on maintenance to fix the leak. (*Id.* at p. 41.) On April 17, 2016, Owens sent another request to Defendant Strubhart for the leak to be fixed, as it still had not been repaired, but he received no response. (*Id.* at p. 42.) On May 8, 2016, Owens filed his first grievance concerning the leak. (*Id.*) On May 9, 2016, Defendant Strubhart responded, stating he spoke to the plumber, Defendant Geier, by phone and was told that due to budgetary problems, Lawrence did not have the supplies needed to repair the leak. (*Id.*)

On May 13, 2016, Owens sent the grievance to the grievance officer. (*Id.*) On May 21, 2016, Owens spoke to Defendant Duncan, the warden, about the leak and how he had to roll his wheelchair through the water. (*Id.* at p. 49.) He also explained he could not get any disinfectant to clean his wheelchair after going through it. Duncan stated he would look into it, but Owens never heard back from him. (*Id.*) On May 23, 2016, Owens spoke

again with Defendant Strubhart about the leak, who said there was nothing that could be done since the plumber did not have the materials to fix it. (*Id*.)

Owens filed a second grievance concerning the leak on June 3, 2016, as there was now a leak coming from the water closet in addition to the shower leak, and he was concerned about sewage. (*Id.* at pp. 52-53.) On July 7, 2016, Owens spoke once again with Defendant Strubhart about the leak not being fixed and requested meetings with Defendant Goings, the warden of operations, on August 3 and 12, 2016. (*Id.* at p. 56.) Owens did not receive a response from Defendant Goings. (*Id.*)

Owens sent a third grievance, an emergency grievance, to Defendant Lamb, the new warden, on December 18, 2016. (*Id.* at p. 58.) On February 10, 2017, and February 15, 2017, Owens spoke with Defendant Dallas, his housing unit lieutenant, about the leak not being repaired, and Defendant Dallas told Owens "he would see what he could do." (*Id.* at p. 60.) The leak was not repaired.

On March 15, 2017, Owens spoke with the ADA Coordinator, Defendant Brookhart, about the leak, and she told him she would look into the situation. (*Id.* at pp. 62-63.) On June 8, 2017, Owens spoke with Strubhart again about the leak not being fixed. (*Id.* at pp. 64-65.) Owens filed a fourth grievance on July 11, 2017, complaining that it had been a year but the problem still had not been corrected (Doc. 64, Ex. C-4-1).

On August 3, 2017, seventeen months after being placed in segregation, Owens was sent from the prison on a court writ, and upon his return, he was placed in a different cell. (*Id.* at pp. 67-68). Owens then filed this lawsuit on September 18, 2017 (Doc. 1). Defendants now seek summary judgment (Doc. 54).

LEGAL STANDARD

Defendants, as the moving parties in this summary judgment motion, have the burden of showing that there is no genuine dispute as to any material fact and that they are entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a); *see* also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Any doubt as to the existence of a genuine issue must be resolved against the moving party." *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In deciding a motion for summary judgment, the Court does "not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (citing *Anderson*, 477 U.S. at 249-50). Instead, the Court must ascertain whether a genuine issue of triable fact exists. *Id.* A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. 248. "The evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 940 (7th Cir. 2007) (citing *Anderson*, 477 U.S. at 255).

DISCUSSION

"[P]ursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511

U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). While the Constitution does not mandate comfortable prisons, it does not permit inhumane ones. *Farmer*, 511 U.S. at 832 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

An inmate plaintiff must meet two requirements to succeed on an Eighth Amendment claim. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities" or a "denial of basic human needs." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (citing *Rhodes*, 452 U.S. at 347). Restrictive, harsh or uncomfortable prison conditions that are neither cruel nor unusual are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. A prisoner is not entitled to "the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

Second, a "prison official must have a sufficiently culpable state of mind which is one of 'deliberate indifference' to the inmate's health or safety." *Snipes*, 95 F.3d at 590. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be

inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985). Mere "negligence or even gross negligence does not constitute deliberate indifference." *Snipes*, 95 F.3d at 590. "There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm." *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

A.   **Objectively Serious Deprivation**

Defendants first argue that Owens failed to meet his burden of proof in establishing an objectively, sufficiently serious deprivation (Doc. 54, p. 1).

The objective component of the Eighth Amendment inquiry requires the Court to assess the severity of the violation as well as its duration. *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Thus, a "condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." *Id.* "Prisons must provide reasonably adequate sanitation . . . particularly over a lengthy period of time." *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Moreover, the Seventh Circuit has found that unsanitary conditions may deprive a prisoner of the minimal civilized measure of life's necessities. *See, e.g.*, *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases). In *Vinning-El*, the plaintiff prisoner endured six days in a segregation cell where the floor was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces. *Id.* The prisoner also was not provided with a mattress, sheets, toilet

paper, towels, shoes, soap, toothpaste, or any personal property. *Id.* The Court found these conditions sufficient to violate the Eighth Amendment. *Id.* at 925.

Here, Defendants argue that in addition to Owens being told that the facility did not have the budget to fix the leak, Owens's "cell house was cleaned by inmate porters daily; the showers cleaned once a day and the cell house swept and mopped three times a day." *Id.* Also, Owens was given a mop head to soak up any water that leaked in his cell. *Id.* Although it may have been annoying to have "clean water" in a puddle in his cell, they argue, Owens cannot show the shallow puddle that occasionally formed in his cell deprived him of the minimal civilized measure of life's necessities." Accordingly, Defendants argue that Owens has "failed to meet the high burden to establish that the leak in his cell constituted a sufficiently serious deprivation to basic life necessities."

Owens's testimony, however, refutes Defendants' contention. Owens testified that while the porters are supposed to clean the showers once a day and sweep and mop three times a day, sometimes the porters were there on the weekends and sometimes Owens did not see them for months. (Doc 55-1, p. 46.) Owens also testified that he was given a dry mop head to sop up the water a few months after the leaks began, but only when there was an extra mop head in the janitorial closet. (*Id.* at pp. 43-44, 63-64.) Sometimes that would be once a day, sometimes he would go weeks without one. (*Id.*) Owens also testified that the leak he noticed in March 2016 was "waste water" from the showers and that the water was contaminated with "feces and dead skin cells." (Doc. 55-1, p. 53, ¶¶ 1-15.) He was concerned that another leak from the water closet, which he noticed in June 2016, could be sewage (Doc. 55-1, p. 53, ¶¶ 1-15). Furthermore, Owens,

who is wheelchair-bound, had to roll his wheelchair through the waste water, which caused it to get on his hands. While a few days of such conditions may not rise to the level of a constitutional violation, Owens endured them for seventeen months.

Construing these facts in the light most favorable to Owens, the Court believes a reasonable jury could find that Owens's conditions of confinement were sufficiently serious to deprive him of the minimal civilized measures of life's necessities.

**B.     Defendants' Deliberate Indifference to the Conditions**

Defendants argue that even if Owens's claim is sufficiently serious, it still must fail because he cannot prove Defendants did not take reasonable steps to prevent harm. (Doc. 55, p. 8). They assert that upon first being informed of a leak in Owens's cell, Defendants immediately responded by putting in a work order or reaching out to maintenance staff to determine how to address the leak. (*Id.*, p. 9).

The Supreme Court has stated that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted," because it cannot be said that they were deliberately indifferent. *Farmer*, 511 U.S. at 844; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

In this case, the Court finds that Defendants Strubhart and Geier responded reasonably to the risk to Owens's health. Defendant Strubhart put in a work order for the leak to be fixed on March 18, 2016, three days after Owens first complained about the leak. Defendant Strubhart also responded to Owens's first grievance stating that he spoke to the plumber, Defendant Geier, who informed him that Lawrence did not have the

supplies needed to repair the leak due to budgetary constraints. Eventually, Defendant Strubhart told Owens on more than one occasion that "he had done everything he could do, spoken to Defendant Geier, the wing officers, everyone, and there was nothing more he could do." (Doc. 55-1, pp. 51, 55, 66.) Likewise, Defendant Geier, the plumber, completed the work order on the leak in March and informed Defendant Strubhart that Lawrence did not have the supplies needed for him to fix the leak (Doc. 53, p. 3, ¶ 18). While their efforts proved fruitless, these Defendants' actions suggest they responded to the risk in a reasonable manner. *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *12 (N.D. Ill. June 5, 2013) (finding defendant was not deliberately indifferent when he attempted to resolve the cell's plumbing issues by placing work orders); see also *Wilson v. Morrow*, No. 14-1162-JES, 2017 WL 5559907, at *8-9 (C.D. Ill. Nov. 17, 2017). Therefore, summary judgment in favor of Defendants Strubhart and Geier is proper.

On the other hand, there is a genuine issue of material fact as to whether Defendants Lamb, Duncan, Brookhart, Goings, and Dallas acted with deliberate indifference. Owens testified or submitted evidence that he spoke to each of these Defendants about the waste water leak in his cell, but they did nothing in response. Viewing the facts in the light most favorable to Owens, a reasonable jury could find that these Defendants acted with deliberate indifference.

**C.    Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity because "Plaintiff alleged unconstitutional conditions of confinement but…the evidence is clear that none of the Defendants ever violated any of Plaintiff's constitutional rights."

(Doc. 55, pp. 10-11). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U. S. 731, 737 (2011). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement. *Farmer*, U.S. at 832. Given the fact that Owens endured unsanitary conditions in his cell for seventeen months, the Court cannot conclude at this point in the litigation that Owens was not denied a clearly established statutory or constitutional right. Thus, the Court declines to grant summary judgment to Defendants on the basis of qualified immunity.

**D.     Owens's Claim for Compensatory Damages**

Defendants also argue they are entitled to summary judgment on Owens's claim for compensatory damages because "Plaintiff has not provided any evidence showing he suffered any physical injury as a result of Defendants' conduct." (Doc. 55, p. 11). "[N]o Federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Here, Owens has provided evidence of actual injury. While Owens has suffered from hemorrhoids, constipation, indigestion, and rashes in the past (Doc. 55-1, pp. 75-76; Doc. 64-1), he argues that some of these previous conditions were exacerbated by the unsanitary conditions in his cell (Doc. 55-1, pp. 70-74). Moreover, during that time period, Owens states that he suffered from twelve colds for which he had to seek medical aid, unexplained bleeding in his ear, severe abdominal pain, infections around his skin and

nails which required triple antibiotic ointment, and muscle cramping for which he had to take muscle relaxers (Doc. 64, p. 25). Viewing the record in the light most favorable to Owens, Defendants are not entitled to summary judgment on his claim for compensatory damages.

**E.  Owens's Claim for Punitive Damages**

Finally, Defendants argue that they are entitled to summary judgment on Owens's claim for punitive damages because, they claim, Owens has not provided evidence that Defendants took any action with evil motive or intent or reckless disregard of his federally protected rights. (Doc. 55, p. 11.)

"Punitive damages are awarded to punish and deter reprehensible conduct" and "may be awarded under 42 U.S.C. § 1983 upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others." *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003). Here, Owens contends that Defendants were not only aware of the conditions of his cell but did not do anything to help him. A reasonable jury could find that Defendants' conduct was reprehensible and that they acted with reckless indifference toward Owens, a disabled inmate confined to a wheelchair. Therefore, Defendants are not entitled to summary judgment on Owens's claim for punitive damages.

CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants (Doc. 54) is **GRANTED in part and DENIED in part**. Judgment is **GRANTED** in favor of Defendants Jeffrey Strubhart and Michael Geier on Count 1 and **DENIED** as to all other

Defendants. Summary judgment is **DENIED** on the issues of qualified immunity, compensatory damages, and punitive damages.

This matter shall proceed to trial on Count 1 for violation of unconstitutional conditions of confinement against Defendants Nicholas Lamb, Steven Duncan, Russel Goings, Dee Dee Brookhart, and Alan Dallas. Counsel will be recruited to represent Owens at trial. Once counsel has entered an appearance, the Court will set a status conference for the purpose of discussing settlement potential and/or setting a firm trial date.

**IT IS SO ORDERED.**

DATED: March 27, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**